Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A Professional Corporation**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com
    sestradavillela@gastelumfirm.com

Christian Contreras, SBN 330269
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF MICHAEL VASQUEZ, *et al.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MICHAEL VASQUEZ, by and through successor in interest, Kathy Nigro; KATHY NIGRO, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; PATRICK LINDO; JONATHAN WAMBAUGH; JUSTIN WILLIAMS; COLE TENNE; NATHANIEL WOODY; HUGO BAUTISTA and DOES 1 through 10, individually, jointly and severally,<br><br>Defendants. | **CASE NO.: 5:23-cv-00988-JGB-DTB**<br>*[Assigned to the Hon. Jesus G. Bernal, District Judge; Referred to the Hon. David Bristow, Magistrate Judge]*<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);<br>5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Intentional Infliction of Emotional Distress;<br>11. Declaratory Relief (28 U.S.C. § 2201)<br><br>**DEMAND FOR JURY TRIAL** |

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## COMPLAINT FOR DAMAGES

**COME NOW** Plaintiffs ESTATE OF MICHAEL VASQUEZ, by and through successor in interest, Kathy Nigro, and KATHY NIGRO, individually, and allege as follows:

## I.

## INTRODUCTION

1. This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee Michael Vasquez who had been in jail for only six (6) days prior to his death on May 26, 2022 at the Riverside County Sheriff's Department, Cois M. Byrd Detention Center. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.



2. Michael Vasquez was the loving son of Kathy Nigro and the caring brother to his six (6) younger siblings. As the first-born son and the oldest of seven (7) children, Michael will always be remembered as the "man of the house" and the protector of his family. Michael had a contagious laugh and a smile that lit up the world. He was genuine, a hard worker and was his mother's pride and joy. At the time of Michael's death, he was only 20 years old with his whole life in front of him. Michael's mother mourns the loss of her son every day, lamenting over the lost opportunities to see her eldest boy get married and hold his children. His death has been a profound and unimaginable loss to his beloved mother, the present Plaintiff, and his six (6) younger siblings.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

3.    In 2022, eighteen (18) individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last fifteen (15) years.  In response to these alarming numbers, the California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in the record-breaking in-custody deaths.  The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

4.    Long before Michael Vasquez's death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention Center and the Blythe Jail.

5.    The individuals named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the Riverside County correctional facilities through the long history of in-custody deaths; ; the inmate-on-inmate violence which permeated the jails; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's Department's obligations under the Eighth and Fourteenth Amendments; and through

**SECOND AMENDED COMPLAINT FOR DAMAGES**

a voluntarily entered Settlement Agreement which required that the Riverside County Sheriff's Department remedy all of the deficiencies addressed in the *Gray* class action.

6. Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities. Thus, by the time Michael Vasquez was taken into custody and placed at the Cois M. Byrd Detention Center, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Michael Vasquez's death on May 26, 2022.

## II.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

8. This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

9. Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

10. Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

11. With respect to the supplemental state claims, Plaintiffs request that this

4

SECOND AMENDED COMPLAINT FOR DAMAGES

Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## IV.

## PARTIES

### A. Plaintiffs

12.    Decedent Michael Vasquez was a 20-year-old young man, who was the loving son of Kathy Nigro and the caring brother to his six (6) younger siblings. At the time of his death, he was a pretrial detainee who resided in the County of Riverside, California. The claims made by Plaintiff ESTATE OF MICHAEL VASQUEZ, are brought by successor in interest, Kathy Nigro.

13.    Plaintiff Kathy Nigro, is and was, at all times relevant hereto, the natural mother of decedent Michael Vasquez, and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Michael Vasquez on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

### B. Defendants

14.    Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees and the Correctional Health Services (hereinafter also

SECOND AMENDED COMPLAINT FOR DAMAGES

"CHS") employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through RCSD and CHS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities, including the Cois M. Byrd Detention Center (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LSCF"), John J. Benoit Detention Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

15.    Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

16.    Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant DELGADO was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant DELGADO was responsible for the  general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance

**SECOND AMENDED COMPLAINT FOR DAMAGES**

and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

17.    Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant KRACHMER was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Corrections Assistant Chief, Defendant EDWARD DELGADO. Defendant KRACHMER is being sued in his individual capacity.

18.    Defendant DAVID HOLM (hereinafter also "HOLM") is and was at all times relevant herein the Corrections Captain at CBDC, one of the highest-level supervisory positions. During the relevant time period, Defendant HOLM was the Corrections Captain at CBDC, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the CBDC, including ensuring the safety of the inmates housed therein. As Corrections Captain, Defendant HOLM was responsible for supervision of RCSD and CHC employees and/or agents at the CBDC, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD and CHC's employees alleged herein were committed. Defendant HOLM also directly supervised Defendant DOES 9 and 10. Defendant HOLM is being sued in his individual capacity.

19.    Defendant PATRICK LINDO ("LINDO"), at all times mentioned herein, was employed by Defendant COUNTY as a Watch Commander at the CBDC, one of the highest-level supervisory positions.  During the relevant time period,

7

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Defendant LINDO was the Watch Commander at CBDC, and was primarily responsible for assisting the Corrections Captain with oversight and administration of the CBDC, including ensuring the safety of the inmates housed therein. As the Watch Commander, Defendant LINDO was responsible for supervision of RCSD custody staff, CHS staff, and/or agents at the COUNTY Jails, and specifically CBDC, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD custody staff and CHS medical staff alleged herein were committed. Defendant LINDO also directly supervised Defendants JONATHAN WAMBAUGH, COLE TENNE, NATHANIEL WOODY, and HUGO BAUTISTA and DOES 1 through 6. At all times mentioned herein, Defendant was acting within the course and scope of that employment. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

20.   Defendant JONATHAN WAMBAUGH ("WAMBAUGH"), at all times mentioned herein, was employed by Defendant COUNTY as a Correctional Sergeant at CBDC, a high-level supervisory positions. During the relevant time period, Defendant WAMBAUGH was the Correctional Sergeant at CBDC, and was responsible for supervision of RCSD custody staff, CHS staff, and/or agents at the COUNTY Jails, and specifically CBDC, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD custody staff and CHS medical staff alleged herein were committed. Defendant WAMBAUGH also directly supervised Defendants COLE TENNE, NATHANIEL WOODY, and HUGO BAUTISTA.

21.   Defendant COLE TENNE  ("TENNE"), at all times mentioned herein, was employed by Defendant COUNTY as a correctional deputy at the RCSD, including the CBDC, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant TENNE was assigned to work at the D-Pod Housing Module within the CBDC, and was responsible for carrying out RCSD

8

**SECOND AMENDED COMPLAINT FOR DAMAGES**

policies and procedures and for ensuring the safety of inmates at the Jail. Defendant TENNE was assigned to work as the primary deputy on May 26, 2022, when Michael Vasquez  died. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

22.   Defendant NATHANIEL WOODY ("WOODY"), at all times mentioned herein, was employed by Defendant COUNTY as a Correctional Corporal at the RCSD, including the CBDC, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant WOODY was assigned to work at the D-Pod Housing Module within the CBDC, and was responsible for carrying out RCSD policies and procedures and for ensuring the safety of inmates at the Jail. Defendant WOODY was assigned to work as a floor deputy on May 26, 2022, when Michael Vasquez died. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

23.   Defendant HUGO BAUTISTA ("BAUTISTA"), at all times mentioned herein, was employed by Defendant COUNTY as a Correctional Deputy of the COUNTY Jails, including the CBDC, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant BAUTISTA was assigned to work at the D-Pod Housing Module within the CBDC, and was responsible for carrying out RCSD policies and procedures and for ensuring the safety of inmates at the Jail. Defendant BAUTISTA was assigned to work as a floor deputy on May 26, 2022, when Michael Vasquez died. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

24.   Defendant JUSTIN WILLIAMS, at all times mentioned herein, was employed by Defendant COUNTY as an investigator at the RCSD, Corrections Central Investigations Bureau, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant WILLIAMS was assigned to

**SECOND AMENDED COMPLAINT FOR DAMAGES**

investigate the death of Michael Vasquez, and was responsible for carrying out RCSD policies and procedures pertaining to the RCSD's internal investigations into in-custody deaths. Defendant WILLIAMS was assigned to work as an investigator on May 26, 2022, when Michael Vasquez was found unresponsive in his cell. Thereafter, Defendant WILLIAMS continued to be the lead investigator on behalf of the RCSD relating to Mr. Vasquez' death, and continued in that position until Defendant WILLIAMS provided the RCSD supervisors and policymakers with his final disposition. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

25.     Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER HOLM, LINDO, WAMBAUGH, TENNE, WOODY, BAUTISTA and WILLIAMS will hereinafter be referred to as the COUNTY DEFENDANTS.

26.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

27.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE

SECOND AMENDED COMPLAINT FOR DAMAGES

defendant is a resident of California. On information and belief, DOES 1 through10 were and still are residents of the County of Riverside, California. DOES 1 through 10 are sued in both their individual and official capacities.

28.    At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

29.    At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

30.    Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers

11

**SECOND AMENDED COMPLAINT FOR DAMAGES**

under their direction and control, including failing to take remedial or disciplinary action.

31.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Michael Vasquez's constitutional rights and other harm.

32.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

33.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

34.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

35.     On May 26, 2022, at approximately 5:40 p.m., Michael Vasquez (hereinafter also "Decedent") was found unresponsive in his cell at the Cois M. Byrd Detention Center, located at 30755-B Auld Road, Murrieta, California 92563.

36.     On May 20, 2022, when Michael Vasquez was booked into CBDC. Given Mr. Vasquez's history, which was known to the CBDC custody and medical staff, Mr. Vasquez was particularly susceptible to the being harmed and/or killed by

SECOND AMENDED COMPLAINT FOR DAMAGES

the hazards which permeated the COUNTY Jails.  Given these circumstances, any competent custody and medical staff should have ensured that Mr. Vasquez was properly housed; was properly monitored and supervised; and was in an environment where Mr. Vasquez was not exposed to the hazards which would very well harm him and kill him.   This is particularly true given the fact that Mr. Vasquez died in-custody on May, 26, 2022—five months into the RCSD Jails' deadliest year arising from the infestation of drugs.

37.     From May 20, 2022 to May 26, 2022, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10, and each of them, were aware of the risks of hazards, such as Fentanyl, which infested COUNTY Jails. Furthermore, from May 20, 2022 to May 26, 2022, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10, were also aware of how such hazards put Mr. Vasquez at substantial risk.

38.     On May 26, 2022, at approximately 2:58 p.m. and 4:10 p.m., Defendant WODDY conducted an inadequate and improper Title 15 safety check of D-Pod.

39.     On May 26, 2022, at approximately 1:33 p.m., Defendant WAMBAUGH conducted an inadequate and improper supervisory check of D-Pod.

40.     On May 26, 2022, at approximately 5:12 p.m., Defendant TENNE conducted an inadequate and improper Title 15 safety check of Mr. Vasquez's cell. Merely 28 minutes later, at around 5:40 p.m., Mr. Vasquez's cellmate, Michael Silva, frantically contacted Defendant TENNE via the cell intercom because Mr. Vasquez had blood coming out of his mouth and was not breathing.

41.     When the CBDC custody and medical staff arrived to the cell, Mr. Vasquez no longer had a pulse.  The custody and medical staff observed visible signs of livor mortis on Mr. Vasquez's body[1], as well as froth coming out of his mouth. Clearly, Michael Vasquez had been experiencing a medical emergency for an

---

[1] Indeed, Coroner Yturralez later estimated that Mr. Vasquez had been dead for about one to two hours before he was found unresponsive.

13

**SECOND AMENDED COMPLAINT FOR DAMAGES**

appreciable amount of time prior to his death which went unnoticed by the CBDC custody staff, including Defendants WODDY, WAMBAUGH and TENNE.

42.     During a search of the common areas of dayroom 4, Investigator Galapir found Mr. Vasquez' property box, which contained a small plastic bag that contained a white powdery substance believed to be Fentanyl. It is believed that Mr. Vasquez' property box was moved out into the dayroom during life-saving measures.

43.     An investigation into the origin of the white powdery substance led investigators to inmate Matthew Freiling. It was later discovered that Mr. Freiling and Mr. Vasquez had four interactions on May 25, 2022, and nine interactions on May 26, 2022. Additionally, on May 25, 2022, Michael Vasquez used Mr. Freiling's phone pin to make a call. Given Mr. Freiling's criminal history of multiple drug-related charges, any competent custody staff should have been immediately suspicious of his frequent interactions with an inmate with Mr. Vasquez's history.  This concern is amplified by the fact that RCSD and CBDC custody staff were acutely aware of the pervasive drug infestation within their facilities.

44.     Upon information and belief, Mr. Vasquez acquired the hazardous material from Mr. Freiling during the dayroom session on May 26, 2022.

45.     Upon information and belief, the dayrooms at the COUNTY Jails are not properly monitored nor supervised.  Indeed, the dayrooms are run by the inmates themselves with contraband freely distributed amongst the inmates and with inmates clearly under the influence of drugs and alcohol.  Upon information and belief, the RCSD custody staff intentionally turn a blind eye towards the inmates' distribution and use of contraband within the COUNTY Jails.

46.     Upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, Michael Vasquez's dire need for emergency medical intervention went unnoticed by the CBDC custody staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Michael Vasquez.

14

**SECOND AMENDED COMPLAINT FOR DAMAGES**

47.     Due to the great delays in securing adequate emergency medical attention for Michael Vasquez, and the failures on behalf of the CBDC custody staff in performing the required safety and welfare checks, Mr. Vasquez did not respond to medical intervention and died on May 26, 2022 at approximately 5:59 p.m.

48.     Michael Vasquez was only 20 years old when he died on May 26, 2022 while he was in custody at the Cois M. Byrd Detention Center.  He had only been in jail for six (6) days before he was found unresponsive in his cell.

49.     On May 26, 2022, Defendant JUSTIN WILLIAMS was working as an investigator for the RCSD, Corrections Central Investigations Bureau.  Defendant WILLIAMS was assigned to investigate the facts and circumstances surrounding Mr. Vasquez' death.  Thereafter, and until July 20, 2022 Defendant WILLIAMS conducted an investigation that served to shield Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6 from liability with regard to Mr. Vasquez' death. Defendant WILLIAMS failed to properly investigate Mr. Vasquez' death by omitting material facts provided to him during inmate witness interviews, failing to interview everyone with knowledge of Mr. Vasquez' actions prior to his death, and further manufactured witness recollection in an effort to ensure that Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6 would not be disciplined with regard to Mr. Vasquez' death.  Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH where aware of Defendant WILLIAMS' wrongful conduct related to his investigatory role into Mr. Vasquez' death, and nevertheless ratified and authorized Defendant WILLIAMS' investigatory findings and case disposition.

50.     Michael Vasquez was a pretrial detainee, and therefore, innocent until proven guilty.

51.     Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910, *et seq.*, and this

**SECOND AMENDED COMPLAINT FOR DAMAGES**

action is timely filed within all applicable statutes of limitation.

52.   This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

53.   Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. The COUNTY Jails Experienced Their Deadliest Year in 2022.**

54.   In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Prior to 2022, Riverside County had not logged more than twelve (12) such deaths in any year since 2005. [2]

55.     Michael Vasquez's death is one of eighteen (18) in-custody deaths within the COUNTY Jails during the 2022 calendar year, and was the fifth death that year:

a. Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

b. Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

c. Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

d. Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

e. Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose")[3]

f. Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death: "Accident-Overdose")

g. Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death: "Natural")

h. Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

i. Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of Death: "Accident-Overdose")

[2] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[3] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death.  He had been in the facility for only (6) six days prior to being exposed to the dangers and risks permeating the CBDC, all of which ultimately resulted in his death.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

j.  Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

k.  Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death: "Natural")

l.  Mario Solis (Date of Loss: September 3, 2022; Manner of Death: "Accident")[4]

m.  Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation")[5]

n.  Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

o.  Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful")[6]

p.  Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

q.  Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

---

[4] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (*i.e.*, cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap. Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a *suicidal* pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide. What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[5] Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender. Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

[6] Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with. *See* "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

18

**SECOND AMENDED COMPLAINT FOR DAMAGES**

r.  Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

56.     The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three (3) pending.  Seven (7) of the in-custody deaths have occurred at the Cois M. Byrd Detention Center in Murrieta, California.

57.     The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails.  According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[7]

58.     The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides.  On November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at RPDC.  From November 19, 2022 through November 23, 2022, Mr. Wall made repeated requests for psychiatric care and medication.  Mr. Wall suffered from schizophrenia and suicidal ideations, which was known to the COUNTY custody and medical staff given his prior attempts to commit suicide at RPDC in 2015, as well as his extensive medical and mental health history.  These requests were ignored by the custody and medical staff. On November 23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak with a psychiatrist.  The custody staffer demanded to know why Mr. Wall needed to speak with a psychiatrist.  When Mr. Wall hesitated, the custody staffer shouted, "Do what you gotta do! Stop pushing my fucking buttons or you're gonna give me a

---

[7] *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

19

**SECOND AMENDED COMPLAINT FOR DAMAGES**

reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the second story of his housing module.

**B. The COUNTY Jails Are On Track to Surpass the Number of In-Custody Deaths in 2023.**

59. Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails will have the deadliest year in 2023 – surpassing the eighteen (18) in-custody deaths from 2022.

60. As of May of 2023, the COUNTY has already claimed the lives of six (6) persons who died while in the custody of the COUNTY:

    a. On January 12, 2023, pretrial detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his cellmate at CBDC. Mr. Spratt was only 24 years old at the time of his death.

    b. On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at RPDC. Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the RPDC. Mr. Spratt was only 26 years old at the time of his death. An investigation into the manner and means of death remains pending.

    c. On February 6, 2023, pretrial detainee Jesus Rodriguez died in-custody due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

    d. On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

    e. On March 11, 2023, an unidentified pretrial detainee was found unresponsive in his cell at CBDC. Upon information and belief, the death was caused by hazards permeating the CBDC. An investigation into the manner and means of death remains pending.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

f. On May 27, 2023, pretrial detainee Ruben Guzman died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Mr. Guzman was in fear of his life and attempted suicide by jumping off of a top tier at the COUNTY Jails. Mr. Guzman survived the attempted suicide and was told by custody staff: "You should have gone headfirst." Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023. He died four days later on May 27, 2023. An investigation into the manner and means of death remains pending.

g. On July 5, 2023, Astrid Johnson, a 62-year-old man female inmate housed in the JBDC, died in-custody. Upon information and belief, RCSD personnel and CHC medical personnel failed to provide Ms. Johnson with adequate medical care. An investigation into the manner and means of death remains pending.

h. On August 14, 2023, an unidentified 71-year-old pretrial detainee male was found unresponsive in his cell at JBDC. Upon information and belief, the death was caused by hazards permeating the JBDC. An investigation into the manner and means of death remains pending.

61. The Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2023 deaths of Kaushal Niroula, Ulyses Munoz Ayala, Mark Spratt, and Ruben Guzman, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

///

///

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**C. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.**

62.     Despite the record-braking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 12525[8] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[9]

63.     The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

64.     The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.[10]

65.     The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners. [11] Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done

---

[8] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[9] *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[10] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[11] *Id.*

22

**SECOND AMENDED COMPLAINT FOR DAMAGES**

purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.[12]

## D. California Department of Justice Launches Patterns and Practices Investigation into Recording Breaking In-Custody Deaths at the COUNTY Jails.

66.     On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[13] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died just days after being booked.[14]  For reference, San Diego County had 19 in-

---

[12] Pretrial detainees are perceived as innocent under the eyes of the law.  Because they are mere detainees who are simply awaiting their day in court, the Constitution mandates that additional protective measures be put in place to ensure that the detainees are not harmed while in the government's custody.  More specifically, the 14th Amendment requires that correctional facilities not be deliberately indifferent towards the detainees' safety and protection. *See Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been convicted of a crime, they are deemed to be a post-conviction prisoner.  While the Constitution too protects post-conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to cruel and unusual punishment while in the government's custody. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  The end result is that the legal standard under which a civil rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction prisoner (*i.e.*, subjective standard) rather than a pretrial detainee (*i.e.,* objective standard).  Upon information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as inmates who had already been "sentenced" in an effort to make it merely impossible for the families to establish liability because of the heightened standard of culpability imposed on civil rights cases filed by post-conviction prisoners.

[13] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[14] *Id.*

**SECOND AMENDED COMPLAINT FOR DAMAGES**

custody deaths in 2022, despite an average *daily* jail population of *500 more people than* Riverside County.

67.    During the press conference, the California Attorney General Rob Bonta expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the institutions that serve them […]. When some communities don't see or feel they are being treated equitably by law enforcement, it contributes to distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths and allegations of misconduct — too many families and communities in Riverside County are hurting and looking for answers. As part of my office's ongoing efforts to support constitutional policing, the California Department of Justice is opening a civil rights investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are worried about crime in your neighborhood, we all benefit when there is action to ensure the integrity of policing in our state."

68.    In response to the California Department of Justice's civil rights investigation in the COUNTY Jails, SHERIFF BIANCO issued the following offensive statement illustrating indifference towards the lives lost in his jails: "This investigation is based on nothing but false, and misleading statements, and straight-out lies from activists, including their attorneys. This will prove to be a complete waste of time and resources."[15]

**E. RCSD's History of Indifference Towards Inmates Incarcerated at the COUNTY Jails.**

69.    For well over a decade now, the COUNTY's own Grand Jury, as well as several independent auditors, have come to the same conclusion: dangerous deficits

---

[15] *See* Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at https://www.youtube.com/watch?v=6ttMVVLyfaQ

**SECOND AMENDED COMPLAINT FOR DAMAGES**

in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

70. The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas. [16]

71. The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report. [17]

72. On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

73. The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

    a. RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

    b.  RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to

---

[16] *See* 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

[17] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

**SECOND AMENDED COMPLAINT FOR DAMAGES**

establish legally required confidentiality, and to identify and correct its own failings;

    c. RCSD, by policy and practice, maintains and runs substandard medication management and administration;

    d. RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

    e. RCSD, by policy and practice, provides substandard medical care to inmates;

    f. RCSD, by policy and practice, provides substandard mental health care to inmates;

74. On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

75. On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

76. On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum. As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

77. Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* Class Action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

///

///

///

///

26

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**F. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His COUNTY Jails.**

78.     A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id*. "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id*.

79.     The endemic, ongoing and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails.  SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

80.     SHERIFF BIANCO has made several public statements all of which serve as illustrations of his great indifference towards the inmates, most of whom are

**SECOND AMENDED COMPLAINT FOR DAMAGES**

pretrial detainees and innocent under the eyes of the law, who are in the government's custody in his COUNTY Jails.

81.   Despite the alarming trends in overdoses and in-custody deaths, SHERIFF BIANCO blames the decedents and their families for the in-custody deaths and overdoses in the COUNTY Jails – all of which are fully controlled and managed by him.

82.   On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died." [18]

///
///
///
///
///
///
///
///
///
///
///
///
///

---

[18] *See* "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise Facebook Page, September 16, 2022), available at: https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20county%20inmates%20died

**SECOND AMENDED COMPLAINT FOR DAMAGES**

83.   Within fourteen hours of the article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:[19]

(1)   Did they demand that their family members not commit suicide or consume drugs while they were in custody?

(2)   Did they ever demand that their family members not commit crimes in the first place?

(3)   Did their parents ever demand they take responsibility for their own actions?

(4)   Do they ever think they played a huge part in the situation they find



---

[19] Notably, SHERIFF BIANCO deleted the post thereafter. SHERIFF BIANCO did this despite the post being highly relevant and material to Plaintiffs' supervisorial claims against him. This is textbook definition of spoliation. Courts generally agree that the duty to preserve is triggered as soon as a potential claim is identified. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *6-7 (C.D. Cal. 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. 2020). Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner*, LLP, 590 F.3d 638, 649 (9th Cir.2009); *see also Leon v. IDX Systems Corp.*, 464 F.3d 951, 959, (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'").

**SECOND AMENDED COMPLAINT FOR DAMAGES**

themselves in, other than the personal actions of their deceased loved one?

84.  SHERIFF BIANCO also blames the inmates themselves:  "There are inmates that purposely get arrested just to smuggle drugs into jail. It is either for money, money on the outside, money or favor on the inside […] It's part of that culture of power inside the jails, and drugs are a part of it."[20]

85.  In response to the Department of Justice's recent announcement about its decision to investigate the patterns and practices existing within the COUNTY Jails, SHERIFF BIANCO expressed the following indifference towards pretrial detainees dying at alarming rates within his COUNTY Jails: "Of course I'm not happy, this is going to waste our time.  Every single one of these inmate deaths was out of anyone's control.  The fact of the matter is that they just happened to be in our custody."[21]

86.  Interestingly, SHERIFF BIANCO has taken this hardline (and insulting) position when asked about fentanyl overdoes in his jails.  Yet, upon information and belief, SHERIFF BIANCO is currently being investigated by the Federal Bureau of Investigation ("FBI") for his interference with a murder investigation arising from two fentanyl overdoses in the City of Riverside which occurred on February 21, 2022 before many of the fentanyl overdoes in COUNTY Jails.

87.  On February 21, 2022, 22-year-old Sierra Riane Rangel and 21-year-old Arrena Marie Mariotti died from fentanyl overdoses.[22]

///

///

---

[20] See "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News, September 26, 2022), available at: https://www.mercurynews.com/2022/09/26/southern-california-jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/

[21] See "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert Sun, March 5, 2023), available at https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-riverside-county-sheriffs-department/69967829007/

[22] See "Man Charged with Murder After 2 Riverside Woman Died from Fentanyl Overdoses," (The Press-Enterprise, April 28, 2022), available at https://www.pressenterprise.com/2022/04/28/man-charged-with-murder-after-2-riverside-women-died-from-fentanyl-overdoses/

30

**SECOND AMENDED COMPLAINT FOR DAMAGES**

88.    On February 24, 2022, murder charges were filed against Peter Luis Mera Garcia.[23]  Upon information and belief, Peter Luis Mera Garcia is the son of a senior level deputy at RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. Notably, the criminal case received wide public attention as this was the first time in the COUNTY OF RIVERSIDE that a person had been charged with murder due to a fentanyl death.

89.    Upon information and belief, the Riverside Police Department ("RPD") Special Weapons and Tactics ("SWAT") was charged with executing the search warrant of suspect Peter Luis Mera Garcia's home.

90.    Upon information and belief, suspect Peter Mera Garcia lived with his parents, including his father who was a senior level deputy employed by the RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

91.    Upon information and belief, Former RPD Sergeant, Frank Hoyos, was one of the SWAT Team members assigned to execute the search warrant.

92.    Upon information and belief, prior to the execution of the search warrant, RPD Chief of Police Larry Gonzalez was called by SHERIFF BIANCO for a favor.  SHERIFF BIANCO asked Chief Gonzalez to provide him with the name of the RCSD senior level deputy.

93.    Upon information and belief, RPD Chief Gonzalez proceeded to call RPD Sergeant Jimmy Simmons, who had no involvement with the investigation of this double homicide. RPD Chief Gonzalez informed Sgt. Simmons that he was calling him because SHERIFF BIANCO wanted to know the name of his deputy whose son had been booked.  RPD Chief Gonzalez tasked Sgt. Simmons with the assignment of finding out the name for SHERIFF BIANCO.

94.    Upon information and belief, RPD Sgt. Simmons secured the name of the RCSD senior deputy and relayed the name to RPD Chief Gonzalez.

---

[23] *Id.*

31

**SECOND AMENDED COMPLAINT FOR DAMAGES**

95. Upon information and belief RPD Chief Gonzalez then relayed the name to SHERIFF BIANCO.

96. Upon information and belief, SHERIFF BIANCO then alerted his senior level deputy that the RPD SWAT Team would be executing the search warrant on a specific date and time and looking for very specific evidence in his home.

97. Upon information and belief, the RCSD Senior Level Deputy convened with his son, suspect Peter Luis Mera Garcia, and together they ensured that when the RPD SWAT Team arrived at their home, they would find zero traces of a crime.

98. Upon information and belief, when the RPD SWAT Team executed the search warrant during the early morning hours, the SWAT Team was greeted by the RCSD Senior Level Deputy who welcomed the SWAT Team into his home.  Indeed, no evidence of a crime was found.

99. Clearly, SHERIFF BIANCO is personally responsible for the fentanyl crisis in RIVERSIDE COUNTY and has intentionally refused to make adequate measures within his jail to prevent individuals from dying from fentanyl.

**VII.**

**PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS**

**(Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH, COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1-10)**

100. Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

101. Long before Michael Vasquez's death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH, COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1 through 10 knew

32

SECOND AMENDED COMPLAINT FOR DAMAGES

that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

102.   Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH, COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; inmate-on-inmate violence; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody and medical staff's deliberate indifference towards the safety and protection of inmates; the warnings from the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement Agreement which the COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT  remedy all of the deficiencies in healthcare and disability accommodations alleged in the *Gray* Class Action complaint.

103.   Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH, COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1 through 10 have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

104.    The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

## VIII.

## FIRST CAUSE OF ACTION

**Failure to Protect from Harm,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Michael Vasquez As Against Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10**

105.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

106.    Pretrial detainees such as Mr. Vasquez have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

107.    Upon information and belief, on May 20, 2022 and May 26, 2022, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6, and each of them, made the intentional decision to place Mr. Vasquez in a condition of confinement which significantly exposed him to the risk of harm which ultimately caused Mr. Vasquez's death.

108.    Indeed, well before May 20, 2022 and including the evening of May 26, 2022, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6, had express knowledge concerning the hazards, including Fentanyl, which could cause death or seriously harm inmates such as Mr. Vasquez and put Mr. Vasquez at substantial risk of suffering serious harm. However, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6, did not take reasonable available measures to abate or reduce that risk,

34

**SECOND AMENDED COMPLAINT FOR DAMAGES**

even though any reasonable person in such circumstances would have appreciated the high degree of risk involved. It was clear that the consequence of not abating or reducing such risks would entail overdose and death which was obvious under the circumstances. Clearly, by not taking such measures, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6, caused Mr. Vasquez's death.

109.   Worst yet, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6 failed to properly utilize the surveillance cameras placed within the housing modules for the purpose of ensuring proper and adequate custodial supervision and monitoring of inmates. Because of these Defendants' deliberate conduct, Michael Vasquez' dire need for emergency medical intervention went unnoticed and/or unattended by Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6 who were responsible for monitoring and ensuring the welfare of all inmates, including Michael Vasquez.

110.   Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6 failed to conduct proper and timely Title 15 welfare and safety checks, thereby authorizing, permitting, and/or encouraging a correctional environment wherein the infestation of dangerous hazards, such as illicit drugs, posed a substantial risk to the health and safety of inmates, like Michael Vasquez. Because of these Defendants' deliberate conduct, Michael Vasquez was indeed exposed to dangerous hazardous resulting in his death on May 26, 2022.

111.   Due to the great delays in securing adequate emergency medical attention for Michael Vasquez, and the wrongful and deliberate conduct on behalf of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6 of failing to adequately monitor and supervise inmates through the use of surveillance cameras to ensure that a medical emergency does not go unnoticed and is attended to in a timely manner; and failing to perform the required safety and welfare

35

**SECOND AMENDED COMPLAINT FOR DAMAGES**

checks, Michael Vasquez did not respond to medical intervention and died on May 26, 2022.

112. Defendants COUNTY, RCSD, COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Michael Vasquez's position.

113. Each Defendant could have taken action to prevent unnecessary harm to decedent Michael Vasquez but refused or failed to do so.

114. By policy, procedure, and practice, Defendants COUNTY, RCSD, COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the CBDC, as alleged above. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Michael Vasquez at CBDC.

115. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including CBDC, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

116. Defendant SHERIFF BIANCO failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including CBDC, who, upon information and belief, directed the deputies to falsify safety check logs and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO ratified their actions, and the practices used under his watch.

117. Defendants COUNTY, RCSD, and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY

SECOND AMENDED COMPLAINT FOR DAMAGES

Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious harm.

118. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10 failed to properly train and supervise RCSD custody and medical staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including CBDC.

119. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

120. Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10 ratified Defendants DOES' actions and inactions amounting to constitutional violations.

121. Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10's failure to conduct the required safety check of decedent Michael Vasquez's housing unit on the date of his death evidences deliberate indifference to the risk of harm to decedent Michael Vasquez.

122. Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10 ratified Defendants DOES' failure to conduct safety checks and falsification of logs.

123. As a direct and proximate result of Defendants' conduct, the civil right of Michael Vasquez, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Michael Vasquez experienced physical

37

**SECOND AMENDED COMPLAINT FOR DAMAGES**

pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

124. Defendants subjected decedent Michael Vasquez to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

125. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

126. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

127. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## IX.

## SECOND CAUSE OF ACTION

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Michael Vasquez As Against Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10**

128. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

129. By the actions and omissions described above, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Michael Vasquez, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to

SECOND AMENDED COMPLAINT FOR DAMAGES

Michael Vasquez's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

130.   By the actions and omissions described above, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Michael Vasquez with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody,  constituted deliberate indifference to Michael Vasquez's serious medical needs, health, and safety.

131.   As a direct and proximate result of Defendants' conduct, the civil rights of Michael Vasquez, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Michael Vasquez experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

132.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

133.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

134.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

135.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## X.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiff Kathy Nigro As Against Defendants COLE TENNE,**

**NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10**

136.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

137.   The aforementioned acts and/or omissions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10 in being deliberately indifferent to decedent Michael Vasquez's protection, safety, and serious medical needs, violating decedent Michael Vasquez's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Michael Vasquez deprived Plaintiff KATHY NIGRO of her liberty interests in the parent-child relationship in violation of her substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

138.   All of the acts of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10 and the persons involved were done under color of state law.

139.   The acts and omissions of each Defendant deprived Plaintiff KATHY NIGRO of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of her rights to a parent-child relationship with decedent Michael Vasquez without due process of law by their deliberate indifference in denying Michael Vasquez protection and safety while incarcerated at CBDC and access to medical care while suffering a medical emergency at CBDC.

40

**SECOND AMENDED COMPLAINT FOR DAMAGES**

140.   Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and RCSD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

141.   In addition, the training policies of the COUNTY and RCSD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY Jails custody and medical staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody and medical staff would engage in conduct that would deprive persons such as decedent Michael Vasquez, and thus Plaintiff KATHY NIGRO, of her rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

142.   Defendants COUNTY and RCSD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff KATHY NIGRO and decedent Michael Vasquez by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to Michael Vasquez's injuries and death and thus the deprivation of the rights of Plaintiff as to be the moving force causing those injuries.

143.   Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the actions and omissions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10, all of whom

**SECOND AMENDED COMPLAINT FOR DAMAGES**

were custody and medical staff at the COUNTY Jails, including CBDC, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

144.   As a direct and proximate result of Defendants' conduct, the civil rights of Michael Vasquez, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Michael Vasquez experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

145.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

146.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

147.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

148.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## XI.

## FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff Estate of Michael Vasquez As Against Defendants COUNTY OF**

**RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**

149.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

SECOND AMENDED COMPLAINT FOR DAMAGES

150.   The unconstitutional actions and/or omissions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

a.   To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

b.   To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

c.   To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

d.   To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

e.   To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

f.   To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates'

**SECOND AMENDED COMPLAINT FOR DAMAGES**

medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

g.   To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

h.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

i.   To cover up violations of constitutional rights by any or all of the following:

    i.    By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

    ii.   By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

    iii.  By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Riverside County jails; and

    iv.   By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the RCSD, or

44

**SECOND AMENDED COMPLAINT FOR DAMAGES**

medical staff does not provide adverse information against a fellow officer, or member of the RCSD or the medical staff;

k. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

151. The unconstitutional actions and/or omissions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, and JONATHAN WAMBAUGH:

a. To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b. To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d. To cover up violations of constitutional rights by any or all of the following:

 i. By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

45

**SECOND AMENDED COMPLAINT FOR DAMAGES**

      ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

      iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.    To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

152. Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1

46

**SECOND AMENDED COMPLAINT FOR DAMAGES**

through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Michael Vasquez, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

153.   The unconstitutional actions and/or omissions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, WILLIAMS and DOES 1 through 10, and other RCSD custody and medical staff,  as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD,  including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that such policymakers have direct knowledge of the fact that the death of Michael Vasquez  was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/RCSD, and his rights to have access to medical care when suffering a medical emergency. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, WILLIAMS and DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Michael Vasquez. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH and DOES 8 through 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct

47

of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

154.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent Michael Vasquez's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Michael Vasquez to their wrongful conduct, depriving decedent Michael Vasquez of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Michael Vasquez, Plaintiffs and others would be violated by their acts and/or omissions.

155.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and RCSD, as described above, decedent Michael Vasquez suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

///

///

///

///

///

///

///

///

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## XII.

## FOURTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Michael Vasquez As Against Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, JONATHAN WAMBAUGH, JUSTIN WILLIAMS and DOES 7 through 10**

156.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

157.   At all material times, SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

158.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', decedent Michael Vasquez's, and others' constitutional rights, which were thereby violated as described above.

159.   As supervisors, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise

49

**SECOND AMENDED COMPLAINT FOR DAMAGES**

such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CBDC and the rights to the serious medical needs of decedent Michael Vasquez. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Michael Vasquez of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Michael Vasquez of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Michael Vasquez's rights, and in fact did cause the violation of decedent Michael Vasquez's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Michael Vasquez' rights.

160. The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Michael Vasquez's, and others' constitutional rights, which were thereby violated as described above.

161. The unconstitutional actions and/or omissions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Michael Vasquez was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Michael Vasquez. By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

162. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through

**SECOND AMENDED COMPLAINT FOR DAMAGES**

10 were a moving force and/or a proximate cause of the deprivations of decedent Michael Vasquez's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

163.   Defendants subjected decedent Michael Vasquez to their wrongful conduct, depriving decedent Michael Vasquez of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Michael Vasquez and others would be violated by their acts and/or omissions.

164.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM, LINDO, WAMBAUGH, WILLIAMS and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## XIII.

## SIXTH CAUSE OF ACTION

### Negligence – Wrongful Death

### Plaintiff Kathy Nigro As Against All Defendants

165.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

166.   At all times, Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1 through 6 owed Plaintiff and decedent Michael Vasquez the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

167.   At all times, these Defendants owed Plaintiff and decedent Michael Vasquez the duty to act with reasonable care.

SECOND AMENDED COMPLAINT FOR DAMAGES

168.   These general duties of reasonable care and due care owed to Plaintiff and decedent Michael Vasquez by these Defendants include but are not limited to the following specific obligations:

     a.   To summon, or transport Decedent to, necessary and appropriate emergency medical care;

     b.   To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

     c.   To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical crisis with serious medical needs;

     d.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

     e.   To refrain from abusing their authority granted them by law; and

     f.   To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

169.   Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA, JUSTIN WILLIAMS and DOES 1 through 6, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Michael Vasquez.

170.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

171.   As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Michael Vasquez sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## XIV.

## SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

### Plaintiff Estate of Michael Vasquez As Against All Defendants

172.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

173.   Decedent Michael Vasquez was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CBDC, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Michael Vasquez to specialist medical care providers; negligently failed to provide physician care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Michael Vasquez.

174.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Michael Vasquez emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Michael Vasquez was provided.

175.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and

54

**SECOND AMENDED COMPLAINT FOR DAMAGES**

against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

176.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## XV.

## EIGHTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### Plaintiff Estate of Michael Vasquez As Against All Defendants

177.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

178.   Defendants COLE TENNE, NATHANIEL WOODY, HUGO BAUTISTA and DOES 1 through 6 was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD, knowing and/or having reason to know of decedent Michael Vasquez's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

179.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

180.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent Michael Vasquez was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

SECOND AMENDED COMPLAINT FOR DAMAGES

## XVI.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code §52.1

### (Tom Bane Act - Survival Action)

### Plaintiff Estate of Michael Vasquez As Against All Defendants

181.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

182.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq*.

183.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Michael Vasquez was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Michael Vasquez's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

    a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

    b.   The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

    c.   The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

    d.   The right to emergency medical care as required by California Government Code §845.6.

56

**SECOND AMENDED COMPLAINT FOR DAMAGES**

184.   Defendants' violations of decedent Michael Vasquez's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.1[24] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Michael Vasquez's rights as described above, Defendants violated Michael Vasquez's rights by the following conduct constituting threat, intimidation, or coercion:

    a.   With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

    b.   With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

    c.   Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

    d.   Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

    e.   Requiring medical staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

    f.   Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat,

---

[24] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**SECOND AMENDED COMPLAINT FOR DAMAGES**

intimidation, coercion, and ongoing violations of rights as Decedent was here.

185.    The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Michael Vasquez's rights, or to any legitimate and lawful jail or law enforcement activity.

186.    Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

187.    Further, each Defendant violated decedent Michael Vasquez's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

188.    Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

189.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Michael Vasquez's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## XVII.

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Plaintiff Kathy Nigro As Against Defendant SHERIFF CHAD BIANCO

190.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

191.    On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the

SECOND AMENDED COMPLAINT FOR DAMAGES

following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."

192.   Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families, including Plaintiff, and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:

    a.   Did they demand that their family members not commit suicide or consume drugs while they were in custody?

    b.   Did they ever demand that their family members not commit crimes in the first place?

    c.   Did their parents ever demand they take responsibility for their own actions?

    d.   Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

193.   Defendant SHERIFF BIANCO posted these comments on the public form with the intent to harass and cause Plaintiff Kathy Nigro mental anguish and turmoil.   He knew that given the public forum nature of the Facebook post that the family of Michael Vasquez, including the present Plaintiff, would read said harassing and offensive comments and that his actions would cause them great mental/psychological pain and anguish.   Notwithstanding, SHERIFF BIANCO deliberately engaged in this harassing and confrontational behavior.

194.   It was his intention to cause them great mental/psychological pain and anguish, and he did so through these actions.

195.   Plaintiff Kathy Nigro seeks compensatory damages incurred as a proximate result of Defendant SHERIFF BIANCO's deliberate and intentional

misconduct.  Plaintiff has suffered great emotional harm and will continue to suffer such harm in the future as a direct and proximate result of the aforementioned acts or omissions by Defendant SHERIFF BIANCO.

196.   The acts or omissions of Defendant SHERIFF CHAD BIANCO, as alleged above were willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of exemplary and punitive damages against him.

197.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

198.   As a direct and proximate result of these Defendant SHERIFF BIANCO's intentional conduct, Plaintiff Kathy Nigro sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## XVIII.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C. § 2201)

### Plaintiffs As Against All Defendants

199.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

200.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

201.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## XIX.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.   Wrongful death of Michael Vasquez, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.   Michael Vasquez's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.   Violation of Michael Vasquez's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.   Michael Vasquez's loss of life, pursuant to federal civil rights law;

F.   Michael Vasquez's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.   General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.   Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.   Punitive damages as to individual peace officer defendants;

J.   Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.   A multiplier of damages, including treble damages, and penalties under the Tom Bane Act;

L.   Interest; and

M.   All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: August 15, 2024          **GASTÉLUM LAW, APC**

By: _____
Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF MICHAEL VASQUEZ, by and through successor in interest, Kathy Nigro; KATHY NIGRO, individually

Dated: August 15, 2024          **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF MICHAEL VASQUEZ, by and through successor in interest, Kathy Nigro; KATHY NIGRO, individually

62

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiffs, ESTATE OF MICHAEL VASQUEZ, by and through successor in interest, Kathy Nigro, and KATHY NIGRO, individually, hereby make a demand for a jury trial in this action.

Dated: August 15, 2024

**GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_

Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF MICHAEL VASQUEZ, by and through successor in interest, Kathy Nigro; KATHY NIGRO, individually

Dated: August 15, 2024

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _Christian Contreras_

Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF MICHAEL VASQUEZ, by and through successor in interest, Kathy Nigro; KATHY NIGRO, individually

63

SECOND AMENDED COMPLAINT FOR DAMAGES